## In re Adoption of Baby C

*Colleen C. McCarthy* (Attorney "B"), for Adoptors.

NYGAARD, *J.,* January 27, 1987—On January 23, 1987, this court issued an order disallowing certain payments which had been requested by and paid to attorney "A" by the adoptive parents. The is-

sue presented in this case raises a question as to whether or not he and the biological mother are profiting impermissibly from the placement of the new-born infant into an adoptive home.[1] The question arose when an investigator hired by this court under Orphans' Court Rule 15.5 questioned and investigated the fees charged to the adoptive parents in this case. The questioned fees in the case were $850 for attorney fees, and a $3,000 payment requested by, and paid to, attorney "A" for further payment to the biological mother.

This court has consistently held that any fees paid by adoptive parents to biological parents for *any reason* other than a reimbursement for medical expenses (and reasonable other expenses attendant thereto) were impermissible, and disallowed by this court. Furthermore, this court has disallowed attorney fees beyond those which are reasonable and directly related to the expertise required, the time and effort expended in the preparation and presentation of the petition, and the representative of the client. The court's rationale is that excessive fees would permit the attorney to impermissibly profit from the placement and adoption of newborn infants.

Chronologically, the events of this case began with the birth of the subject infant on [   ].[2] A valid consent was obtained from the biological mother and father pursuant to 23 Pa.C.S §2711 on [   ], three days later.[3]

---

1. Surnames will be referred on only by initial throughout this opinion to preserve the confidentiality of the parties as required by the Adoption Act. The initials do not coincide with actual initials.

2. Dates will be replaced by brackets throughout this opinion to preserve the confidentiality of the parties as required by the Adoption Act.

3. All statutory citations hereafter are in Title 23.

On that same date the intermediary transferred the physical care and custody of the child from the biological mother to the adoptive parents. The report of intent to adopt, which is due *within* 30 days after the receipt of the custody or physical care of the child, was signed on the 30th day. However, attorney "A" did not file the report until [    ] — more than eight months late.

Meanwhile, the biological parents, who had signed consents pursuant to section 2711, had not signed, nor had attorney "A" prepared, petitions to permit a voluntarily relinquish of their parental rights pursuant to §§2501, 2502 and 2503. Accordingly on August 21, 1986, attorney "B" prepared and filed a petition to confirm consents pursuant to section 2504.[4] A hearing was set for September 17, 1986, and the citations were served upon both biological parents on September 8, 1986.

On August 25, 1986, attorney "B" prepared and filed adoptors' petition to adopt. On September 17, 1986, this court held its hearing on that petition. During the course of the hearing the adoptive parents revealed to the court that on the day before the baby was born, attorney "A" informed the adoptive parents that they would have to "come up with $3,000." His statement to them was that "the mother wanted it for lost wages."

The adoptors also testified that they had paid a fee of $1,000 to attorney "A." According to their testimony it included a payment of $500 attorney fee for themselves/the adoptors, and a $500 fee for the biological mother. (The report of intermediary reflects a fee paid to attorney "A" of $850 with a $150 fee paid to the intermediary.)

---

4. Adoptors original attorney was discharged and substitute counsel entered her appearance on August 7, 1986.

In addition to the above amounts, the adoptors also paid $1,188 for the hospital, obstetrician, pediatrician and lab tests for the baby.

Attorney "A" failed to file the disclosure of fees and costs required by Orphans' Court Rule 15.5(d). On September 25, 1986, the court requested him to do so.[5] When attorney "A" failed to respond voluntarily, the court ordered him to do so on October 30, 1986. On November 7, 1986, a statement was filed which was inadequate, incomplete and not in compliance with our order. On November 12, 1986, we ordered that the balance of the information be supplied this court within five days. On November 17, 1986, attorney "A" complied.

In attorney "A's" disclosure statement, he makes no justification for the fee except that it is his "flat fee" and "office standard." On the same date, attorney "A" filed a 15.5(d) statement in an unrelated case claiming $250 as "flat fee" and "office standard." Consequently we find that he has failed to justify anything more than payment for one initial office call. See also, DR 2-106(A), (B)(1), (3), (6) and (7).

The intermediary's performance was fully explained and contained elements immediately incidental to the physical transfer of the child from the biological mother at the hospital to the adoptors. Justification was provided to the court. Consequently we conclude that the intermediary may retain the fee paid to her. See section 2533(c).

With respect to the payment on behalf of the biological mother, the Supreme Court has recently

---

5. While the court will not normally decree an adoption until all exhibits are filed, we did so on this occasion to terminate the unwarranted legal travail adoptors had been required to endure.

held that payments to or for natural parents by adoptive parents are permissible only when the payments are for services which *"directly benefit the child."* (emphasis added). The court further held that any fees paid by adoptive parents which might operate as consideration for the transfer of a child are to be disallowed. See *In re Baby Girl D, a Minor et al.,* 512 Pa. 449, 517 A.2d 925 at 927 (1986).

Finally, *In re Baby Girl D et al.,* supra, which is "must reading" for any attorney who may be involved in adoption proceedings, concludes: "It is the function of the orphans' court division of the court of common pleas to guard that adoptions do not provide a profit, for, when they do, someone is surely 'dealing in humanity' in contravention of the criminal statute." Supra at 930.

This court, is satisfied that the $3,000 payment requested by attorney "A" on behalf of the biological mother is clearly in contravention of the law, and may well be "dealing in humanity" in contravention of the criminal statutes. Furthermore, this court believes that the attorney fees charged to the adoptive parents would permit the attorney to profit "impermissibly from the placement of newborn infants in adoptive homes." *In re Baby Girl D,* supra at 926.

For the foregoing reasons, this court has entered its order dated January 23, 1987.